UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

IMELDA HUERTA, ) No. EDCV 07-1617-RC
Plaintiff, )
v. ) OPINION AND ORDER
MICHAEL J. ASTRUE, Commissioner of Social Security, )
Defendant. )

Plaintiff Imelda Huerta filed a complaint on December 21, 2007, seeking review of the decision denying her application for disability benefits. On June 10, 2008, the Commissioner answered the complaint, and the parties filed a joint stipulation on July 14, 2008.

**BACKGROUND**

**I**

On May 5, 2004 (protective filing date), plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since January 10, 2002, due to neck, shoulder and back pain. Certified Administrative Record

("A.R.") 74-77, 88, 91. The plaintiff's application was initially denied on August 16, 2004, and was denied again on January 14, 2005, following reconsideration. A.R. 34-44. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge James S. Carletti ("the ALJ") on August 16, 2007. A.R. 45, 469-95. On September 12, 2007, the ALJ issued a decision finding plaintiff is not disabled. A.R. 9-18. The plaintiff appealed this decision to the Appeals Council, which denied review on November 16, 2007. A.R. 4-8.

**II**

The plaintiff, who was born in Mexico on May 1, 1957, is currently 52 years old. A.R. 75, 79-79A. She has a third-grade education, and previously worked as a faucet painter, a machine presser, an assembler and a packager. A.R. 89, 91-92, 95, 472-73, 488-92.

The ALJ summarized plaintiff's medical records, as follows:

> The [plaintiff] suffered a neck injury in January 2002 and manifested . . . neck and upper extremity pain. MRI scan in March 2002 showed multiple level 2 mm. disc protrusions. In April 2002, consulting neurologist I. Yusufaly, M.D., diagnosed cumulative trauma injury to the cervical spine. In May 2002, board-certified orthopedic surgeon James Matiko, M.D., diagnosed [plaintiff] with mild cervical sprain/strain in his permanent and stationary report. EMG in 2002 showed left median neuropathy and left ulnar

neuropathy. Dr. Yusufaly interpreted this EMG as showing no evidence of cervical radiculopathy. In 2002, [plaintiff] was diagnosed by pain management specialist Eduardo Anguizola, M.D., with cervical disc disease with cervical facet arthropathy. [Qualified Medical Examiner] Gregory Heinen, M.D.[,] diagnosed cervical spine strain with radiation into the bilateral trapezius. In September 2002, [plaintiff] was diagnosed with herniated discs at C4-5 and C5-6 by orthopedic surgeon Allen Fonseca, M.D. He confirmed this diagnosis in May 2003 along with chronic cervical spine strain and sprain. [¶] Progress notes from attending physician Julio Westerbrand, M.D., show continued pain, bilateral trapezial spasm and limited range of motion. [¶] Because conservative therapy was unsuccessful, [plaintiff] underwent fusion surgery of the cervical spine in June 2003. She underwent physical therapy but . . . still had neck pain and stiffness as well as bilateral trapezial spasm with pain and limited range of motion but no neurological deficit. X-ray of the cervical spine in April 2007 showed moderate degenerative changes at C5-6 bilaterally.[[1]]

---

[1] The cervical spine x-rays also showed plaintiff was status post-anterior interbody fusions and discectomies at C4-C5 and C5-C6. A.R. 465. Additionally, lumbar spine x-rays taken the same day showed moderate disc space narrowing and spondylosis at L5-S1 with grade 1 spondylolisthesis as well as bilateral spondylolysis at L5. A.R. 464. Spondylosis is "a general term for degenerative changes due to osteoarthritis[,]" Dorland's Illustrated Medical Dictionary, 1684 (29th ed. 2000), while spondylolisthesis is "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect of the pars interarticularis[,]"

A.R. 14-15 (citations omitted; footnote added).

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Bray v. Astrue, 554 F.3d 1219, 1222 (9th Cir. 2009).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). Here, plaintiff must prove she was either permanently disabled or subject to a condition which became so severe as to disable her prior to December 31, 2006, A.R. 14, the date plaintiff's disability insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998);

---

id. at 1684, and spondylolysis is the "dissolution of a vertebra; a condition marked by platyspondylia [congenital flattening of the vertebral bodies], aplasia [lack of development of an organ or tissue] of the vertebral arch, and separation of the pars interarticularis [the part of the lamina between the superior and inferior articular processes of a lumbar vertebra]." Id. at 113, 1328, 1401, 1684.

Armstrong v. Comm'r of the Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity between her alleged onset date of January 10, 2002, and her date last insured of December 31, 2006. (Step One). The ALJ then found plaintiff is status post-neck surgery, which is a severe impairment (Step Two);

however, she does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is able to perform her past relevant work as a faucet painter; therefore, she is not disabled. (Step Four).

**IV**

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff has the RFC to: "lift or carry 10 pounds frequently and 20 pounds occasionally; sit for 6 hours out of an 8-hour workday; [and] stand or walk for 6 hours out of an 8-hour workday; [however, she must] avoid very frequent motion of the neck or downward gazing; and [she should be limited to] only occasional shoulder level work." A.R. 15. However, plaintiff contends the ALJ's RFC determination, and ultimate Step Four conclusion, are not supported by substantial evidence because, among other reasons, the ALJ did not properly consider her testimony. The plaintiff is correct.

The plaintiff testified at the administrative hearing that she is unable to work because of constant neck, back and shoulder pain. A.R. 474, 477-78. She also stated she gets daily headaches, and has pain in her hands, knees and feet. A.R. 477-78. The plaintiff averred that the pain sometimes interferes with her ability to sleep, and she sometimes cannot talk because she feels as if her head is going to explode. A.R. 479. She also stated that she can stand for about 10

minutes at a time, sit and/or drive for about half an hour to an hour at a time, and lift less than 10 pounds. A.R. 479-81. She testified further that she tries to walk for about 20 minutes for exercise, but there are times her knees get numb. A.R. 480. She stated she cooks, but then has to lie down because of the pain. A.R. 476. Indeed, plaintiff testified she lies down three or four times during the day for about half an hour each time. A.R. 479. She can read and write in Spanish, but cannot read, write or speak English. A.R. 472.

Once a claimant has presented objective evidence she suffers from an impairment that could cause pain or other nonexertional limitations, the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he "'must provide specific, cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007). Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ found plaintiff not entirely credible for several

reasons, including that plaintiff's "course of treatment, other than her neck surgery in 2003 . . . has generally reflected a conservative approach." A.R. 16. Although receipt of only conservative treatment can undermine a claimant's complaints of debilitating pain, see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."), cert. denied, 128 S. Ct. 1068 (2008), here, as the ALJ obliquely acknowledges, plaintiff did not receive only conservative treatment. In addition to her neck surgery, plaintiff was referred to an anesthesiologist for pain management, which included a series of epidural steroid injections into her cervical spine.[2] A.R. 158-62, 306-12. Therefore, this reason for an adverse credibility finding is not supported by substantial evidence in the record. See Yang v. Barnhart, 2006 WL 3694857, *4 (C.D. Cal.) (ALJ's finding that claimant received conservative treatment was not supported by substantial evidence when claimant was treated with several pain medications and underwent physical therapy and epidural injections); Miller v. Astrue, 2009 WL 800227, *3 (E.D. Cal.) (ALJ's finding that claimant was not credible properly considered "the conservative nature of [claimant's] treatment" since claimant "was not a surgical candidate, did not use a TENS unit, had not undergone epidural steroid injections and only intermittently took pain medications"); Samuels v. Astrue, 2009 WL

---

[2] The Ninth Circuit has characterized "conservative treatment" as, for example, "treat[ment] with an over-the-counter pain medication[,]" Parra, 481 F.3d at 751, or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

1659620, *4 (M.D. Fla.) ("[I]n light of the rendering of treatment including epidural steroid injections," ALJ should reconsider his characterization of claimant's treatment as "routine and/or conservative").

The ALJ also found plaintiff not entirely credible because she "is only taking over-the-counter pain medications[,] . . . [which] have been relatively effective in controlling the [plaintiff's] symptoms[,]" and she "has not alleged any side effects from the use of [other] medications." A.R. 17. Although a claimant's failure to take prescription pain medications, and the lack of significant side effects from prescription medications, may be considered in determining that a claimant's pain is not as severe as claimed, Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam), here, the record shows that plaintiff has been prescribed numerous pain medications, including Elavil,[3] Ibuprofen 800 mg., Naprosyn,[4] Neurontin,[5] Robaxin,[6] Soma,[7] and Vicodin.[8] See, e.g., A.R. 159, 197,

---

[3] Among other uses, Elavil is used "to control chronic pain [and] to prevent migraine headaches. . . ." The PDR Family Guide to Prescription Drugs at 240.

[4] "Naprosyn, a nonsteroidal anti-inflammatory drug, is used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis, osteoarthritis . . ., juvenile arthritis, ankylosing spondylitis . . ., tendinitis, bursitis, and acute gout. . . ." The PDR Family Guide to Prescription Drugs, 435 (8th ed. 2000).

[5] Neurontin is used to treat neurological pain. See Physicians' Desk Reference, 2463 (62nd ed. 2008).

[6] Robaxin, also called Methocarbamol, "is prescribed, along with rest, physical therapy, and other measures, for the relief

199, 221, 224-25, 229, 234, 240, 248, 289, 304, 323, 385-86, 391, 445, 463. Moreover, at the administrative hearing, plaintiff specifically complained that these medications increase her headaches and sometimes irritate her stomach. A.R. 475, 477. Thus, these reasons given by the ALJ for his adverse credibility determination are not supported by substantial evidence in the record.

Finally, the ALJ found plaintiff not entirely credible because "[t]he weight of the objective evidence does not support the claims of the [plaintiff's] disabling limitations to the degree alleged[,]" and plaintiff "does not exhibit any significant disuse muscle atrophy, loss of strength, or difficulty moving that are indicative of severe and disabling pain."[9] A.R. 16-17. However, contrary to the ALJ's findings, the medical evidence demonstrates that even post-surgery, plaintiff's ability to move her neck is limited. See, e.g., A.R. 424, 446-47. Moreover, "[t]he fact that a claimant's testimony is not

---

of pain due to severe muscular injuries, sprains and strains." The PDR Family Guide to Prescription Drugs at 398, 590.

[7] "Soma is used, along with rest, physical therapy, and other measures, for the relief of acute, painful muscle strains and spasms." Id. at 621.

[8] Vicodin is used "for the relief of moderate to moderately severe pain." Id. at 723.

[9] The ALJ also noted that "[t]he record does not show that the [plaintiff] requires any special accommodations (e.g., special breaks or positions) to relieve her pain or other symptoms." A.R. 16. However, since plaintiff testified she needs to lie down several times during the day, A.R. 479, this reason is simply another way of saying plaintiff's testimony is not supported by the objective medical evidence, which, as noted herein, is not sufficient in and of itself to support the ALJ's adverse credibility determination.

fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006).

Since "the ALJ provided unsatisfactory reasons for discounting [plaintiff's] credibility, and . . . his findings were unsupported by substantial evidence based on the record as a whole[,]" Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998), the ALJ's RFC determination, as well as the Step Four determination that plaintiff can perform her past relevant work as a faucet painter, are not supported by substantial evidence. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056-57 (9th Cir. 2006); Moisa, 367 F.3d at 886.

**V**

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke, 379 F.3d at 593; McCartey, 298 F.3d at 1076-77.

//

Here, the record has been fully developed and "remand for further administrative proceedings [would] serve[] no useful purpose and is unwarranted." Benecke, 379 F.3d at 596; Moisa, 367 F.3d at 887. At the administrative hearing, vocational expert S. Fioretti testified that if plaintiff's testimony were credited as true, it "would eliminate all of the work that she did [Step Four][,] as well as all other work [Step Five]." A.R. 494. Thus, "the vocational expert's testimony establishes that taking [plaintiff's] testimony as true, [s]he [is] disabled." Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Moisa, 367 F.3d at 887. Accordingly, the Commissioner should award Title II disability benefits to plaintiff.[10]

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner shall award plaintiff benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Judgment shall be entered accordingly.

DATE: July 22, 2009

/s/ Rosalyn M. Chapman
ROSALYN M. CHAPMAN
UNITED STATES MAGISTRATE JUDGE

---

[10] Having reached this conclusion, it is unnecessary to address any of the other claims plaintiff raises.

R&R-MDO\07-1617.mdo
7/22/09